**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**BRENNAN DURBIN,** *et al.*,

                 **Plaintiff,**              **CASE NO. C2:05-CV-566**

    **vs.**

                                   **MAGISTRATE JUDGE KING**

**FARM SERVICE AGENCY,** *et al.*,

                 **Defendants.**

## OPINION AND ORDER

      This action arose under the "Swampbuster" provisions of the Food Security Act ("Swampbuster"), enacted by Congress in 1985 to protect wetlands and highly erodible land on private property. 16 U.S.C. § 3821. Plaintiffs Brennan Durbin and Thomas Whitney ("plaintiffs") appeal a final determination ("*Director's Review Determination*") of the United States Department of Agriculture ("USDA"), acting through the National Resource Conservation Service ("NRCS"), which determined that Tract 2975 of plaintiff Whitney's land contains 19.2 acres of wetland, that the wetland was present as of December 23, 1985, and that 3.5 acres of that wetland was converted in 1998. As a consequence of this determination, plaintiffs were declared ineligible for programs or benefits administered by the USDA under the provisions of 16 U.S.C. § 3821.

      Plaintiffs name as defendants in this action the Farm Service Agency ("FSA") and the United States Department of Agriculture (collectively "defendants" or "the government"). With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court for judicial review

of the final determination pursuant to 7 U.S.C. § 6999. For the reasons that follow, the Court **AFFIRMS** the *Director's Review Determination*.

## I.     APPLICABLE LAW

Under Swampbuster, any individual who, after December 23, 1985, converts a wetland in a way that production of an agricultural commodity is possible, becomes ineligible for USDA farm benefits. 16 U.S.C. § 3821 (such benefits include price supports or payments, loans, crop insurance, or disaster payments related to agricultural production.). *See also* The Food, Agriculture, Conservation and Trade Act, 16 U.S.C. §§ 3821(c) (1990 amendment to Swampbuster that extended the prohibition to prohibit conversion of a wetland in such a way that production of an agricultural commodity is possible, even if an agricultural commodity has not actually been produced). Proving the existence of a wetland is accomplished by the delineation and determination process established by Congress under 16 U.S.C. § 3822(a)(1). Although the process is highly technical, Swampbuster articulates three indicators, *i.e.,* hydric soil, hydrophytic vegetation and wetland hydrology, that must be present for land to constitute wetland. 16 U.S.C. § 3801(a)(18).[1] A "'converted wetland' means wetland that has been drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in

---

[1]Specifically, wetland is land that:

> (A) has a predominance of hydric soils;
> (B) is inundated or saturated by surface or groundwater at a frequency and duration
>      sufficient to support a prevalence of hydrophytic vegetation typically adapted for
>      life in saturated soil conditions; and
>  (C) under normal circumstances does support a prevalence of such vegetation.

16 U.S.C. § 3801(a)(18).

2

impairing or reducing the flow, circulation, or reach of water) for the purpose or to have the effect of making the production of an agricultural commodity possible . . . ." 16 U.S.C. § 3801(a)(6).

The Food Security Act confers jurisdiction on the USDA, Soil Conservation Service (now the NRCS),[2] to delineate, determine and certify the existence of wetlands. 16 U.S.C. § 3822(a)(1). Administrative review of a wetland determination is conducted by the National Appeals Division of the USDA ("NAD") pursuant to the provisions of 7 U.S.C. § 6993(4). A final determination of NAD is reviewable by a federal district court pursuant to 7 U.S.C. § 6999 ("A final determination of [NAD] shall be reviewable and enforceable by any United States district court of competent jurisdiction . . . .").

## II.     FACTS AND ADMINISTRATIVE PROCEDURE

Plaintiff Durbin is the operator of Tract 2975 pursuant to a farm lease with plaintiff Whitney. *Administrative Record* ("*Record*") at 11, 12, 315; Doc. No. 20. On September 13, 2002, Mr. Durbin made a written request for a certified wetland determination on Tract 2975 and listed the purpose of the request as "the drainage for cropland." *Id.* at 11. Before a determination was made, however, Mr. Durbin withdrew his request. *Id.* at 71, 315.

On October 23, 2002, plaintiffs were notified by letter that the NRCS had received a whistle-blower complaint of a potential wetland violation on Tract 2975. *Id.* at 12, 17, 315. Plaintiffs were informed that, as a consequence, the FSA District Conservationist Doug Gifford would visit the site to "conduct a wetland determination." *Id.* at 12.

_____

[2]The Soil Conservation Service was replaced by the NRCS. 7 U.S.C. § 6962.

On November 7, 2002, the FSA District Conservationist and a NRCS Soil Scientist, Dr. Ed Redman, visited Tract 2975 and determined that it was a wetland and that part of the wetland had been converted ("*Preliminary Technical Determination*"). *Id.* at 12, 315. That determination was based upon evaluation of the soil, ditches, drainage utilities, an aerial photograph and information gathered from plaintiffs. *Id.* 315, 316. Specifically, the *Preliminary Technical Determination* indicated that Tract 2975 contains 19.2 acres of wetland, that the wetland had existed as of December 23, 1985, and that 3.5 acres of that wetland had been converted in 1998. *Id.* at 15-19.

On December 11, 2002, plaintiffs were informed by letter of the *Preliminary Technical Determination*:

> I am making a **preliminary** technical determination that the fields shown on the enclosed wetland determination map contain wetlands and converted wetlands. These areas meet wetland criteria, which are hydric soil, wetland vegetation, and soil wetness. Wetlands were converted by removal of woody vegetation and filling in wetland areas.

*Id.* at 15 (emphasis in original). The letter also informed plaintiffs that they had an opportunity for an additional field visit as well as mediation before the determination became final and that the final determination "will be used by the Farm Service Agency in determining your eligibility for USDA program benefits." *Id.*

On January 6, 2003, Mr. Durbin requested an additional field visit. *Id.* at 20. On January 14, 2003, the District Conservationist made another field visit, considered additional information but nevertheless concluded that the *Preliminary Technical Determination* was accurate. *Id.* at 21-24.

On January 15, 2003, the NRCS issued a final wetland determination ("*Final Technical*

*Determination*"), advising plaintiffs by letter that "the preliminary technical determination" was correct "based on guidance given in the latest edition of the *National Food Security Act Manual*. *Id.* at 21. Plaintiffs were advised that the *Final Technical Determination* could be appealed to the Knox County FSA Committee ("County Committee"). *Id.*

On February 12, 2003, plaintiffs notified the FSA that they wished to exercise their appeal rights. *Id.* at 27, 28. On February 24, 2003, the County Executive Director contacted plaintiffs by letter acknowledging receipt of their appeal and informing them that a hearing would convene on March 11, 2003. *Id.* at 30. The Executive Director also explained that, because the NRCS determined that 3.5 acres of wetland had been converted in 1998, plaintiffs could "be determined ineligible for all USDA benefits." *Id.* at 31.

On March 11, 2003, the County Committee convened an appeal hearing in which plaintiffs participated. *Id.* at 33-35. The County Committee determined that plaintiffs "did not know that the land had wetland characteristics and that they did not intend to violate program rules" ("*First County Committee Decision*"). *Id.* at 35. Thus, the County Committee authorized an additional appeal to the FSA State Conservationist to review the *Final Technical Determination*. *Record* at 36-39.

Pursuant to the *First County Committee Decision*, the FSA State Conservationist reviewed the wetland determination and concluded, by decision issued May 27, 2003, ("*State Conservationist's Determination*"):

> The review indicated that the determination is correct. The documentation found in the case file indicates that the area labeled wetland meets the criteria found in 7 C.F.R. 12 and the National Food Security Act Manual. The site has hydric soils, supports a predominance of hydrophytic vegetation, and meets the wetland hydrology criteria. NRCS acknowledges the presence of drainage within some of the wetland and has allowed maintenance of existing functioning systems that

5

drain other areas. However, the area had reverted to wetland condition as of the enactment of the wetland conservation provisions in 1985. Therefore, it is considered wetland.

The area labeled converted wetland also meets the criteria found in 7 C.F.R. 12 and the National Food Security Act Manual. The removal of trees (including stumps) from a wetland made the area cropable where it had not been before the manipulation. The documentation in the case file supports this determination that this area had been wetland and was now made converted wetland as a result of the manipulation.

*Id.* at 42.

On June 4 2003, the County Committee received the *State Conservationist's Determination*. *Record* at 41. After review of the *State Conservationist's Determination*, the County Committee ratified the *Final Technical Determination* ("*Second County Committee Decision*") following a hearing held on June 10, 2003. *Id.* at 43, 44. Plaintiffs' appeal rights through the FSA and the NRCS were final at this point, *see id.,* but plaintiffs were also informed that they had the right to further appeal to the NAD. *See id.* at 45, 46. Additionally, plaintiffs were informed that, with the ratification of the *Final Technical Determination*, they were ineligible for USDA benefits. *Id.*

On July 9, 2003, plaintiffs appealed the *Final Technical Determination* to NAD. *Id.* at 47, 48. On July 30, 2003, during an initial pre-hearing conference, the NAD Hearing Officer learned that plaintiff Durbin had filed a petition in bankruptcy on September 22, 2002. *Id.* at 395-97. Because the bankruptcy stay prevented NAD from taking any action that could affect matters or assets before the Bankruptcy Court, *see Id.* at 397, the NAD Hearing Officer dismissed the appeal without prejudice to re-filing should the Bankruptcy Court permit the appeal to proceed. *Id.* at 397. Following completion of the bankruptcy proceedings on

6

December 16, 2004, the appeal was in fact reinstated.  *Id.* at 205, 326.

On January 26, 2005, the NAD Hearing Officer heard testimony, accepted documents submitted by the parties and reviewed the prior technical determinations.  In a decision issued February 28, 2005 ("*NAD Appeal Determination*), and after considering the evidence as well as Swampbuster and its regulations, as supplemented by the *National Food Security Act Manual*, the *Corps of Army Engineers Manual* and a *Memorandum of Agreement* between the concerned agencies, *Id.* at 208, the Hearing Officer determined:

> I conclude that the [County Committee] correctly ratified the NRCS wetland determination that 19.2 acres of Tract 2975 are wetlands and its determination that 3.5 acres of the total are converted wetlands.  I base my conclusions on evidence and arguments submitted by the parties during an in-person hearing held January 26, 2005.

*Id.* at 206, 317.

On March 25, 2005, plaintiffs appealed the *NAD Appeal Determination* to the Director of the NAD, *Id.*  at 355-398, and supplemented the request on March 31, 2005.  *Id.* at 343-44.  The Director of NAD issued the *Director's Review  Determination* on May 27, 2005, upholding the *NAD Appeal Determination* and formally adopting its findings of fact.  *Id.* at 312-325.

The *Director's Review Determination* is the final agency action giving rise to the instant case, which was filed on June 10, 2005.  On January 26, 2006, plaintiffs filed the *Amended Opening Brief of Petitioners Brennan Durbin and Thomas Whitney* ("*Plaintiffs' Brief*").  Doc. No. 16.  On March 6, 2006, the *Brief of the Farm Service Agency and the Untied States Department of Agriculture* ("*Government's Opposition*") was filed, Doc. No. 17, and on March 27, 2006, plaintiffs filed the *Reply Brief of Petitioners Brennan Durbin and Thomas Whitney* ("*Plaintiffs' Reply*"), Doc. No. 19.

## III.    STANDARD OF REVIEW

The Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, is the proper

vehicle for judicial review of a final determination of NAD.  *See Barthel v. United States Dep't*

*of Agric.*, 181 F.3d 934, 937 (8th Cir. 1999) (applying APA judicial review to USDA

determinations under the Swampbuster Act);  *Downer v. United States*, 97 F.3d 999, 1002 (8th

Cir. 1996) (same).[3]  This Court reviews only the administrative record.  5 U.S.C. § 706 (1977);

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) ("That review [by the

District Court] is to be based on the full administrative record that was before the [agency] at the

time [it] made [its] decision.").

Under the APA, a final agency determination may be overturned on judicial review only

if it is "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." *Downer*, 97

F.3d at 1002 (quoting 5 U.S.C. § 706(2)(A)).  The parties agree that this standard encompasses

arguments that the agency determination is not supported by substantial evidence.  *Plaintiffs'*

*Brief* at 20-21; *Government's Opposition* at 9.  *See also* 5 U.S.C.§ 706(2)(E).  This narrow

review entails a 'searching and careful' *de novo* review of the administrative record presented to

determine 'whether the decision was based on a consideration of the relevant factors and whether

there has been a clear error of judgment.'" *Downer*, 97 F.3d at 1002 (quoting *Marsh v. Oregon*

*Natural Res. Council*, 490 U.S. 360, 378 (1989)).  *See also Holly Hill Farm Corp. v. United*

*States*, 447 F.3d 258, 263 (4th Cir. 2006) (in determining whether agency action violates §

---

[3]As plaintiffs correctly note, there is a dearth of case law under Swampbuster in the Sixth
Circuit.  *Plaintiffs' Brief* at 7.  Consequently, this Court, like the parties, relies upon our sister
circuits for guidance.

706(2)(A), the "standard of review is a narrow one" whereby courts "perform only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes" and whether the agency has committed "a clear error of judgment").

More specifically, a decision is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise." *Downer*, 97 F.3d at 1002 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). *See also O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9th Cir. 1996) (same).

Further, agency determinations are afforded substantial deference. *Downer*, 97 F.3d at 1002. Nevertheless, "[i]f the agency itself has not provided a reasoned basis for its action, the court may not supply one." *Id.* (citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). *See also Holly Hill*, 447 F.3d at 263 ("The Court is not empowered to substitute its judgment for that of the agency." citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

> This deference is particularly appropriate when the agency determination in issue concerns a subject within the agency's own area of expertise. *Marsh* [*v. Oregon Natural Res. Council*, 490 U.S. 360], 377-78 [(1989)]. An agency making fact-based determinations in its own field of expertise, particularly where those determinations are wrapped up with scientific judgments, must be permitted "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Id.* at 378.

*Downer*, 97 F.3d at 1002.

IV.     ANALYSIS

In *Plaintiffs' Brief*, plaintiffs assign three errors which they claim warrant reversal of the

*Director's Review Determination* on the basis that the final determination is "arbitrary,

capricious, an abuse of discretion, or otherwise contrary to law."  *See Downer*, 97 F.3d at 1002

(quoting 5 U.S.C. § 706(2)(A)).  First, plaintiffs contend that the government has utilized 7

U.S.C. § 6997 and 7 C.F.R. § 11.8(e) to unlawfully shift its burden of proof to plaintiffs in

violation of Swampbuster.  *Plaintiffs' Brief* at 7-16.  Second, plaintiffs argue that the government

failed to delineate the wetland prior to the issuance of its final determination.  *Id.* at 16-20.

Third, plaintiffs take the position that the decision of the government is not supported by

substantial evidence in the record.  *Id.* at 20-24.  The Court will address each contention in turn.

A.     **Burden of Proof**

Plaintiffs contend that, under Swampbuster, the government is assigned a two-part

burden of proof:  (1) the government must prove the existence of a wetland on plaintiffs'

property and (2) the government must prove that plaintiffs are ineligible for USDA benefits by

showing that they do not qualify for an exemption to Swampbuster.  *Plaintiffs' Brief* at 5, 7-16.

1.     **The burden of proving the existence of a wetland.**

Plaintiffs argue that, under Swampbuster, the government must establish the existence of

a wetland. 16 U.S.C. § 3822(a) (Swampbuster "leaves no doubt that the Secretary of Agriculture,

not the individual farmer, bears the burden of proof in wetland cases.").  *Plaintiff's Brief* at 8.

Moving from that initial contentions, plaintiffs contend that the NAD hearing statute, 7 U.S.C. §

6997, and its interpretive regulation, 7 C.F.R. § 11.8(e), which assign the burden of proof to

plaintiffs, conflict with Swampbuster and are therefore inapplicable to this action.  Put another

10

way, plaintiffs argue that the requirements of the more specific Swampbuster provisions "trump" the burden of proof provisions of the more general NAD hearings statute and regulation. *Plaintiffs' Reply* at 3.  This Court, however, perceives no conflict between Swampbuster and the NAD hearing statute and regulation and concludes that defendants correctly allocated the burdens of proof throughout the administrative proceedings leading to this action.

Plaintiffs' argument confuses the nature and the timing of the applicable burdens of proof.  As an initial matter, the FSA and the NRCS must comply with Swampbuster by delineating, determining and certifying wetlands.  *See* 16 U.S.C. § 3822(a).[4]  During that

---

[4]Swampbuster  provides:

(a) Delineation by the Secretary.

 (1) In general. Subject to subsection (b) and paragraph (6), the Secretary shall delineate, determine, and certify all wetlands located on subject land on a farm.

 (2) Wetland delineation maps.  The Secretary shall delineate wetlands on wetland delineation maps. On the request of a person, the Secretary shall make a reasonable effort to make an on-site wetland determination prior to delineation.

 (3) Certification. On providing notice to affected persons, the Secretary shall–

 (A) certify whether a map is sufficient for the purpose of making a determination of ineligibility for program benefits under section 1221 [16 USCS § 3821]; and

 (B) provide an opportunity to appeal the certification prior to the certification becoming final.

 (4) Duration of certification. A final certification made under paragraph (3) shall remain valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary.

 (5) Review of mapping on appeal. In the case of an appeal of the Secretary's certification, the Secretary shall review and certify the accuracy of the mapping of

process, it is the government's burden to support its determination with "sufficient evidence." *National Food Security Act Manual* ("NRCS must demonstrate that an area is wetland, and each determination or delineation must be supported by sufficient evidence."), *Record* at 143.

In this action, the District Conservationist and Soil Scientist concluded that there was sufficient evidence that Tract 2975 contains 19.2 acres of wetland, that the wetland was present as of December 23, 1985, and that 3.5 acres of those wetland acres had been converted in 1998. *Id.* at 15-19. *Id.* at 12, 315. Plaintiffs appealed the *Preliminary Technical Determination*, which was reviewed and determined to be correct "based on guidance given in the latest edition of the" the *National Food Security Act Manual*, *i.e.*, the determination was supported by sufficient evidence. *Id.* at 21. A *Final Technical Determination* was therefore issued, which was appealed to the County Committee. The County Committee issued two decisions: the first, *First County Committee Decision*, authorized an additional appeal to the FSA State Conservationist, who issued the *State Conservationist's Determination*. The *State Conservationist's Determination* concluded that there was sufficient evidence presented to uphold the *Final Technical Determination*. The *State Conservationist Determination* was then reviewed by the County Committee, which issued the *Second County Committee Decision,* which ratified *Final Technical Determination* and which implicitly concluded that the determination was based on sufficient evidence. *Id.* at 43, 44. Moreover, in the final agency review giving rise to this action,

---

all land subject to the appeal to ensure that the subject land has been accurately delineated. Prior to rendering a decision on the appeal, the Secretary shall conduct an on-site inspection of the subject land on a farm.

16 U.S.C. § 3822(a).

*Director's Review Determination*, it was determined:

> I find that FSA has met its burden to show by substantial evidence that tract 2975 was a wetland as of December 23, 1985 and [that plaintiffs] converted 3.5 acres of the tract.

*Id.* at 321.

It was not until the appeals through the FSA and NRCS were completed, and until the *Final Wetland Determination* was ratified by the County Committee, that the burden shifted to plaintiffs[5] to show by a preponderance of the evidence that the adverse decision of the agency was erroneous. *See* 7 U.S.C. § 6997(c)(4) ("Burden of proof. The appellant shall bear the burden of proving that the adverse decision of the agency was erroneous."); 7 C.F.R. § 11.8(e) ("Burden of proof. The appellant has the burden of proving that the adverse decision of the agency was erroneous by a preponderance of the evidence."). *See also Holly Hills Farm Corp. v. United States*, Civil Action No. 3:04CV856, 2005 U.S. Dist. LEXIS 12875, * 13 (E.D. Va 2005) ("In an appeal of [the government's] adverse decision, the appellant bears the burden of establishing that the agency's adverse decision is erroneous by the standard of a preponderance of the evidence.").

Thus, the Court concludes that defendants did not improperly shift to plaintiffs the burden of proof on the issue of the existence of a wetland. *See* 7 U.S.C. § 6997(c)(4); 7 C.F.R. § 11.8(e). Accordingly, plaintiffs' first assignment of error regarding the burden of proving the existence of a wetland is **OVERRULED**.

---

[5]Plaintiffs do not disagree that the NAD statute was properly applied in the *NAD Appeal Determination* and the *Director's Review Determination*.

2.     **The burden of proving that the land at issue qualifies for an exemption to Swampbuster**

Plaintiffs contend that defendants were required to make a "minimal effect" exemption determination before they concluded that plaintiffs violated Swampbuster.  *Plaintiffs' Brief* at 14. Plaintiffs' argument is not well-taken.

The "minimal effect"exemption to Swampbuster provides that a landowner may manipulate a wetland if the changes will have only a "minimal effect on the functional hydrological and biological value of the wetlands in the area." 16 U.S.C.A. § 3822(f).  The regulations further provide that

> NRCS shall determine whether the effect of any action of a person associated with the conversion of a wetland ... has a minimal effect on the functions and values of wetlands in the area.  Such determination shall be based upon a functional assessment of functions and values of the wetland under consideration and other related wetlands in the area, and will be made through an on-site evaluation.  A request for such determination will be made prior to the beginning of activities that would convert the wetland.
>
> If a person has converted a wetland and then seeks a determination that the effect of such conversion on wetland was minimal, the burden will be upon the person to demonstrate to the satisfaction of NRCS that the effect was minimal.

7 C.F.R. § 12.31(d).

Plaintiffs' position, *i.e.*, that defendant's failure to make "a minimal effect" determination is clear error, was recently raised before the United States Court of Appeals for the Fourth Circuit in *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 267-68 (4th Cir. 2006).  The plaintiff in *Holly Hill* argued, relying on two cases referred to by plaintiffs in this action, that the government's failure to make a "minimal effect" exemption before USDA benefits were denied was clear error.  *Id.* (citing *B&D Land & Livestock Co. v. Veneman*, 231 F. Supp.2d 895 (N.D.

14

Iowa 2002) and *Rosenau v. Farm Serv. Agency*, 395 F. Supp.2d 868 (D. N.D. 2005)). The

Fourth Circuit, in an analysis this Court finds persuasive and on point, explained why the

government's failure to articulate its "minimal effect" findings, if any such findings were in fact

made, did not constitute clear error:

> . . . [A]part from the issue of whether Holly Hill would ultimately be entitled to a
> minimal effects exemption on remand, we cannot say that the USDA's initial
> failure to make the minimal effects determination in the instant case rises to
> the level of clear error. Admittedly, in *B&D Land & Livestock Co. v. Veneman*, 231
> F. Supp.2d 895  (N.D. Iowa 2002), the district court explained that "the Hearing
> Officer could not properly consider whether removal of woody vegetation,
> standing alone, is enough to result in the 'conversion' of a wetland . . . unless the
> Hearing Officer had first determined that the purported 'conversion' would have
> more than a 'minimal effect' on the wetland functions and values." *Id.* at 908.
> Similarly, the district court in *Rosenau v. Farm Serv. Agency*, 395 F. Supp.2d 868
> (D. N.D. 2005), stated that "there is no question that the Defendants may declare
> a person ineligible for USDA farm program benefits only after a determination of
> their eligibility for a minimal effect exemption." *Id.* at 874 (emphasis added)
> (citing 7 C.F.R. § 12.4(g); 7 C.F.R. § 12.5(b)(1)(v)).  However, the regulations
> suggest that a person seeking benefits must request consideration for this
> exemption.
>
> The applicable regulation clearly states that a program benefits applicant should
> make a request for a minimal effects determination prior to any conversion
> activity and that if such prior request is not made, the applicant will bear the
> burden of demonstrating that the effect was minimal. *See* 7 C.F.R. § 12.31(d).

*Id.*

Although there likewise is "no evidence in the record" regarding a "minimal effect"

determination in this action, it seems "entirely plausible that USDA experts could nonetheless

conclude" that the 1998 conversion "had more than minimal effects." *Id.*  Indeed, in the

*Director's Review Determination*, it was concluded that the "FSA implicitly found [that

plaintiffs were] not entitled to an exemption." *Record* at 321.

15

Further, in this action as in *Holly Hill*, plaintiffs failed to request a "minimal effect" determination before engaging in the activities that resulted in the conversion of wetlands. *See Holly Hill Farm Corp.*, 447 F.3d at 267-68 . Under these circumstances, then, it became plaintiffs' burden to "demonstrate to the satisfaction of NRCS that the effect [of the 1998 conversion] was minimal." *Id.* at 266 (citing 7 C.F.R. § 12.31(d)).

Plaintiffs have failed to even attempt to show that the effect of the 1998 conversion had only a minimal effect on the functions and values of the wetlands at issue.

Finally, the Court notes that the USDA benefits programs are voluntary and involve the distribution of public funds. As the *Holly Hill* court pointed out, "protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law" and that they be "held to the most demanding standards." *Holly Hill Farm Corp.*, 447 F.3d at 264 (citing *Heckler v. Cmty. Health Servs. of Crawford County*, 467 U.S. 51, 63 (1984)). In the instant action, plaintiffs were required, yet failed, to request a "minimal effect" determination before engaging in the activity that ultimately converted 3.5 acres of wetland on Tract 2975. *See* 7 C.F.R. § 12.31(d). Moreover, plaintiffs have failed to establish that the conversion had only a "minimal effect" on the wetlands. *See id.*

The Court concludes that defendants' failure to explicitly make a "minimal effect" exemption determination before determining that plaintiffs are ineligible for USDA benefits was not inconsistent with 7 C.F.R. § 12.31(d) and was therefore not arbitrary, capricious, an abuse of discretion or otherwise in violation of the law. *See Downer*, 97 F.3d at 1002. Accordingly, plaintiffs' assignment of error regarding the burden of proving the "minimal effect" exemption determination is **OVERRULED**.

**B.      Delineation of the Wetland**

Proving the existence of a wetland is accomplished through the delineation and determination process established by Congress in 16 U.S.C. § 3822(a)(1).  Initially, the NRCS must produce a public record of the boundaries of the wetland.  16 U.S.C. § 3822(a)(1).  In conjunction with this process, the NRCS must provide the property owner a chance to appeal the delineation and to request an on-site investigation of the delineation in the case of an appeal.  16 U.S.C. § 3822(a)(2).

In the case *sub judice*, plaintiffs contend that the government skipped the delineation process entirely prior to its issuing its January 15, 2003, final determination, *Record* at 19-20, and declaring plaintiffs ineligible for USDA benefits on February 24, 2003, *Record* at 28-29. Defendants claim that, in making this argument, plaintiffs ignore the procedural history set in motion by their own actions and properly completed by the agency.  Defendants' argument is well-taken.

Plaintiff Durbin signed a request for a wetland determination on September 13, 2002.  *Id.* at 71.  At that time, District Conservationist Gifford advised Mr. Durbin that he could repair tile and clean some ditch area, "but that drainage should not exceed 1985 conditions."  *Id.*  Mr. Durbin subsequently withdrew the request for a wetland determination, but was advised by the District Conservationist on September 16, 2002, that he could "not give direction on where tile can be placed without a certified wetland determination." The District Conservationist also cautioned Mr. Durbin on the "possible consequences of draining possible wetlands."  *Id.* Following an on-site meeting with Mr. Durbin, on December 11, 2002, the *Preliminary Technical Determination* was issued and was sent to plaintiffs with an attached map in

17

conformity with 16 U.S.C. 3822(a)(1). *Id.* at 15-20. Following the December 11, 2002, preliminary determination letter, Mr. Durbin was afforded the opportunity for, and did in fact request, an on-site field visit, which took place on January 14, 2003. *Id.* at 20-26. This action by the government complied with 16 U.S.C. §3822(a)(2), as well as with 16 U.S.C. § 3822(c), which provides that "[n]o program loans, payments, or benefits shall be withheld from a person under this subchapter unless the Secretary has conducted an on-site visit of the subject land." Plaintiffs also appealed the preliminary determination to the County Committee on February 12, 2003. *Id.* at 27, 33-35. Following the hearing at the county office on March 11, 2003, the matter was referred to the District Conservationist who also reviewed it prior to final determination. *Id.* at 36. Indeed, the delineation process in this case included two on-site visits and multiple levels of review before the final determination was made.

Moreover, and contrary to plaintiffs' contention, this delineation process preceded the final determination, which was not made until June 11, 2003. *Id.* at 46. It was only after this final determination that plaintiffs were denied participation in the USDA farm benefits programs.[6] *Id.*

This Court concludes that defendants properly delineated the wetland prior to issuing a final determination and disqualifying plaintiffs from farm benefits programs. *See Downer*, 97 F.3d at 1002. Accordingly, plaintiffs' second assignment of error is **OVERRULED**.

---

[6]Plaintiffs, citing to the *Record* at 28-29, contend that they were denied participation in the farm benefits programs on February 24, 2003. *Plaintiffs' Brief* at 19. However, the *Record* does not support their contention in this regard.

18

C.      **The USDA Decision and Substantial Evidence**

Plaintiffs argue that the *Director's Review Determination* "fail[s] to give any meaningful consideration to those matters Congress intended it to consider before rendering a final wetland determination in this case." *Plaintiffs' Brief* at 21. This Court disagrees. *See* 16 U.S.C. § 3801(a)(18) (wetlands contain hydric soil, hydrophytic vegetation, wetland hydrology); 16 U.S.C. § 3801(a)(6) (converted wetland has been manipulated for the for the purpose or to have the effect of making the production of an agricultural commodity possible).

The *Director's Review Determination* relies upon reports from on-site soil investigations and evaluations by agency soil experts (the District Conservationist and a Soil Scientist), soil and land maps, an aerial photograph, other photographs, local soil survey data, soil tests, discussions with plaintiffs, testimony of plaintiffs and documents submitted by all parties. *Record* at 313-31.

The Director determined that "in 2002 FSA established by substantial evidence that tract 2975 met each of the three wetland criteria of hydric soils, hydrophitic vegetation and hydrology described in [7 C.F.R.] Section 12.2(a) ... ." *Id.* at 322. Specifically, on-site soil evaluations of Tract 2975[7] "met the hydric soils criteria for a wetland," *i.e.*, "soils that, in an undrained condition, are saturated, flooded, or ponded long enough during a growing season to develop an anaerobic condition that supports the growth and regeneration of hydrophitic vegetation." *Id.* at 322. Further, it was determined that the tract also contained "Holly silt loam, Luray silty clay, and Sebring silt loam." *Id.* These soils "are listed in the county soils list as hydric and the site is

---

[7]Also, the soils on the comparable site (used because the woody vegetation had been removed from 3.5 acres) could not produce an agricultural commodity under natural conditions. The plants found on the sites are listed in the National and Regional Wetland Plant Lists. *Record* at 328.

mapped as hydric soils." *Id.* The *Director's Review Determination* also addresses plaintiffs' argument that they raise again before this Court, *i.e.*, that although Holly loam was identified as one of the hydric soils, that substance is hydric only if the area is frequently flooded and, according to the report of the agency experts, the area is not frequently flooded. *Id.* The *Director's Review Determination* recognized that, while true, that fact "does not undermine their conclusion that the tract had hydric soils." *Id.* Indeed, the Holly loam is only one of the three hydric soils identified on Tract 2975. *See id.*

Also, the "FSA's finding that tract 2975 met the hydrophitic vegetation criteria for a wetland is consistent with its regulations," *i.e.*, 7 C.F.R. § 12.2(a), which defines hydrophitic vegetation as "plants growing in water or in a substrate that is at least periodically deficient in oxygen during a growing season as a result of excessive water content." *Id.* at 323. The on-site investigations found "hydrophitic vegetation consisting of reed canary grass, cattail, carex species, red osier dogwood and sandbar willow." *Id.* Moreover, one of the two on-site reports "indicated that 100 percent of the dominant species were . . . listed as wetland plants on the National and Regional Wetland Plant List." *Id.*

Finally, both primary and secondary indicators of wetland hydrology were observed in the area determined to be wetland. *Id.* at 324. All areas had at least two secondary indicators which is the threshold for meeting the wetland hydrology criteria in the 1987 Corps of Engineers Delineation Manual. *Id.*

There is also substantial evidence in the *Record* to support the findings that Tract 2975 was a wetland as of 1985 and that 3.5 acres of the wetland were converted in 1988. *Id.* at 322, 327-331. Specifically, a review of aerial photography showed the area uncropped from at least

20

the early 1980's until at least 1998. *Id.* FSA had no crop records for the area during that period. *Id.* The aerial photographs also show that, in 1985, the subject tract had pockets of scattered trees growing and a well developed vegetation pattern. *Id.* at 327. In 1998, Mr. Durbin cleared all trees, including the stumps, on the 19.2 acres, cleaned the ditches, and replaced some of the tile. *Id.* 328. The 3.5 acres that had been cleared of woody vegetation are scattered in two small pockets. *Id.* 327. The national wetland inventory map indicates a wetland symbol on this tract. *Id.*

Based on these facts, this Court concludes that there is substantial evidence in the *Record* to support the *Director's Review Determination*. Moreover, the Court notes that the dispute about the existence of wetland and conversion of a part of that wetland are "classic examples of factual disputes implicating substantial agency expertise" to which this Court owes significant deference. *See Downer*, 97 F.3d at 1002 (evaluating (1) "whether the areas in question were wetlands; (2) whether such wetlands were converted; (3) whether the conversion was commenced before December 23, 1985; and (4) whether the areas were artificial rather than natural wetlands"). Thus, deference to the agency's determination is "particularly appropriate" in this instance. *Id.*

The Director relied on the reasonable, fact-based determinations made by the FSA and the NRCS in their own area of expertise. An agency "must be permitted 'to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive.'" *Id.* (citing *Marsh*, 490 U.S. 378). There is substantial evidence in the *Record* supporting the *Director's Review Determination* and the Director clearly evaluated those matters Congress intended before affirming the wetland determination at issue

21

here. Consequently, the Court concludes that plaintiffs have failed to meet their burden of showing that the *Director's Review Determination* is arbitrary, capricious, an abuse of discretion or otherwise in violation of the law. *See* 7 U.S.C. § 6997(c)(4); 7 C.F.R. § 11.8(e). Accordingly, plaintiffs' third assignment of error is **OVERRULED**.

**WHEREUPON** plaintiffs' three assignments of error presented in *Plaintiffs' Brief*, Doc. No. 16, are **OVERRULED**. The *Director's Review Determination* is **AFFIRMED**.

The Clerk shall enter **FINAL JUDGMENT** in this case.

 April 13, 2007                                    *s/Norah McCann King*
Date                                                    Norah M<sup>c</sup>Cann King
                                                            United States Magistrate Judge